IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER DEGRACIA, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:16-CV-0788-D |
| VS. § | |
| § | |
| SOUTHWEST AIRLINES COMPANY, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff's motion to remand this removed action presents the question whether his state-law claims for discrimination based on race and national origin are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §181, and Federal Aviation Administration ("FAA") regulations, thereby permitting the case to be removed under this court's federal question jurisdiction. Concluding that defendant has failed to demonstrate that the claims are preempted, the court grants plaintiff's motion, remands this case to state court, and awards plaintiff his attorney's fees, costs, and expenses under 28 U.S.C. § 1447(c).

I

Plaintiff Alexander DeGracia ("DeGracia") brought this suit in Texas state court against defendant Southwest Airlines Company ("SWA"), alleging claims for discrimination based on race and national origin, in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.051 ("TCHRA"). DeGracia alleges that he is a Hispanic-American of Puerto Rican descent who was employed as a pilot for AirTran Airways

Company ("AirTran") from 2007 until 2014, with intermittent periods of military leave. In 2014, after SWA and AirTran merged, DeGracia began training as a SWA pilot. He was terminated from SWA in 2014. During his employment with SWA, DeGracia was a member of the Southwest Airlines Pilots' Association ("SWAPA") and subject to the collective bargaining agreement ("CBA") between SWAPA and SWA.

After DeGracia was terminated, he filed a grievance under the CBA procedures, seeking reinstatement as an employee in training. To resolve DeGracia's grievance under the arbitration process established by the CBA, SWA and SWAPA convened a System Board of Adjustment ("SBOA"). Two members of the SBOA—Gerald Bradley ("Bradley") and Mark Clayton ("Clayton")—were appointed by SWA. Two members were appointed by SWAPA. The fifth member was a neutral arbitrator. DeGracia alleges that, during the SBOA hearing on the grievance, Bradley repeatedly made negative comments based on DeGracia's race and national origin. At the conclusion of the hearing, the two SWAPA members voted in favor of reinstating DeGracia, and Bradley, Clayton, and the neutral arbitrator voted against reinstatement.

DeGracia sued SWA in Texas state court alleging claims under the TCHRA for race and national origin discrimination. He asserts that, had SWA not discriminated against him, at least one of the SWA-members (Bradley or Clayton) would have voted to reinstate him. SWA removed the case to this court, contending that, because SWA is an employer subject to the regulations of the RLA, 45 U.S.C. § 181, DeGracia's discrimination claims are governed by the CBA and are preempted by the RLA. DeGracia moves to remand and for

an award of attorney's fees, costs, and expenses under 28 U.S.C. § 1447(c).

II

As the removing party, SWA has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper. *See, e.g., Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removal statute is to be strictly construed, *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997), and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction," *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

"Ordinarily, the well-pleaded complaint rule governs federal question jurisdiction. Under the rule, [r]emoval is not possible unless the plaintiff's 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Ervin v. Stagecoach Moving & Storage, Inc.,* 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.) (quoting *Rodriquez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993)) (internal quotation marks omitted). Even if federal claims are available to the plaintiff, he may remain in state court by relying exclusively on state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal claim does not exist simply because facts are available in the complaint to suggest such a claim. *See Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 292 (E.D. Tex. 1988). Complete preemption, however, is an exception to the well-pleaded complaint rule and gives rise to removal jurisdiction. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999).

III

DeGracia's motion to remand presents the question whether SWA has established that DeGracia's state-law claims are preempted by the RLA and FAA regulations. The court considers first whether the claims are preempted by the RLA.

A

Congress enacted the RLA to provide a comprehensive and exclusive framework for resolving labor disputes in the transportation industry. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). According to SWA, the RLA requires parties to a CBA to arbitrate all disputes arising from the interpretation or application of the CBA. SWA posits that DeGracia's state-law discrimination claims are completely preempted by the RLA because they cannot be adjudicated without interpreting the CBA. SWA maintains that DeGracia's claims are artfully pleaded to circumvent the procedures set forth in the RLA; the claims arise solely from conduct that allegedly occurred during the SBOA process; the claims are inextricably intertwined with consideration of the terms of the CBA and the SBOA process; and the claims are nothing more than a collateral attack on the SBOA decision.

DeGracia moves to remand, arguing that the law is well settled that, where provisions of the CBA are relevant to, but not dispositive of, the resolution of the plaintiff's state-law claims, the claims are not preempted by the RLA. DeGracia posits that his claims do not require the court to interpret any provision of the CBA; instead, they present a factual question based solely on SWA's conduct and motives regarding his race and national origin in determining whether to continue his training and employment.

SWA responds that DeGracia's claims arise out of the CBA grievance procedures—not out of his employment with SWA—because he is complaining of conduct that occurred during the SBOA hearing. It contends that a decision in DeGracia's favor on his discrimination claims would be contrary to the SBOA's decision that just cause existed for his termination. And SWA maintains that, to decide DeGracia's state-law claims, the court must interpret the CBA's provisions regarding whether the SWA members of the SBOA acted as agents of SWA or independently.

DeGracia replies that whether the SWA-appointed members of the SBOA acted as agents of SWA is not relevant to his motion to remand, and that his employment rights extended at least until the end of the SBOA hearing process.

B

The RLA requires that disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" be arbitrated. *Hawaiian Airlines*, 512 U.S. at 248 (quoting 45 U.S.C. § 153) (internal quotation marks omitted). The RLA thus preempts federal- and state-law claims "involving the interpretation or application of a CBA." *Hirras v. Amtrak*, 44 F.3d 278, 281 (5th Cir. 1995) (citing *Hawaiian Airlines*, 512 U.S. at 246). But "substantive protections provided by state law, independent of whatever labor agreement might govern, are not preempted under the RLA." *Hawaiian Airlines*, 512 U.S. at 257.

To determine whether DeGracia's state-law claims grow out of his grievance or out of the interpretation or application of the CBA, the court first analyzes the elements of the

claims. *See, e.g., Richter v. Merch. Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir.1996) (per curiam). Tex. Lab. Code Ann. § 21.051 provides that "[a]n employer commits an unlawful employment practice if because of race, . . . [or] national origin, . . the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" DeGracia alleges that there is direct evidence that SWA discriminated against him based on his race and/or national origin. To establish discrimination by direct evidence, DeGracia must prove that SWA made a direct and unambiguous comment related both to the protected class of which he is a member and to his termination, near in time to his termination, by an individual with authority over the decision to terminate him. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).[1] If he makes this showing, the burden shifts to SWA to prove "it would have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

DeGracia's TCHRA claims are independent of the CBA. He alleges that SWA (through its agents who had authority to determine DeGracia's employment status)[2] made comments regarding his national origin and race during the SBOA hearing. If DeGracia

---

[1] Noting the parallels between the TCHRA and the federal antidiscrimination statutes, the Supreme Court of Texas has consistently held that the analogous federal statutes and the cases interpreting them aid in interpreting the TCHRA. *See Reed v. Neopost USA, Inc.* 701 F.3d 434, 439 (5th Cir. 2012).

[2] According to DeGracia's petition, Bradley (primarily) and Clayton (by means of ratification).

meets his initial burden, SWA must prove that it would not have reinstated DeGracia regardless of SWA's discriminatory animus. These issues do not turn on the interpretation of any provision of the CBA; they turn on whether SWA failed to reinstate DeGracia because of his race or national origin. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1998).[3] Even if the court must refer to the CBA to decide DeGracia's discrimination claims, such references to the CBA do not alone establish that his claims are preempted by the RLA. *See, e.g., id.* at 413 n.12 (explaining that a CBA may contain information helpful to the determination of a state-law claim without preempting the state-law claim). And even if SWA relies on the CBA to demonstrate that it had just cause to terminate DeGracia, such reliance does not necessarily render his claims preempted. *See Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 596 (5th Cir. 1993) (holding that plaintiff's state-law workers compensation retaliation claim was not preempted by RLA even though defendant would rely on CBA to establish just cause for its actions).

The distinction between *consideration of* or *reference to* a CBA, as opposed to *interpretation of* the CBA, is illustrated and explained in *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008). In *Carmona* a flight attendant alleged claims for sex discrimination, disability discrimination, and failure to accommodate related to his

---

[3]To the extent that SWA argues that DeGracia can only assert his discrimination claims by seeking review of the SBOA decision according to the procedures set forth in the CBA, the court rejects this argument. SWA has pointed to no provision in the CBA that requires members to bring state-law discrimination claims through the process outlined in the CBA. *See, e.g.*, *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 356 (5th Cir. 2012).

termination by SWA. *Id.* at 345. SWA argued that the district court lacked subject matter jurisdiction because the plaintiff's claims were preempted by the RLA. *Id.* at 346-47. The Fifth Circuit held that the plaintiff flight attendant's allegations of discrimination "d[id] not bring the meaning of any CBA provisions into dispute"; therefore, "consideration of the CBA *as applied to Title VII and the [Americans with Disabilities Act]*—not interpretation of the CBA itself—is what is required to resolve [his] claims." *Id.* at 349-50 (emphasis in original). The panel noted that "Southwest's contention that [the plaintiff's] claims necessitate CBA interpretation fails to recognize the distinction between reference to the CBA and reliance on it." *Id.* at 349. As the panel explained:

> [a]s provisions of the CBA are relevant to, but *not* dispositive of, the resolution of Carmona's claims, his claims do not constitute a minor dispute under the RLA. Even though a court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination. Carmona's factual allegations that unexcused absences by female flight attendants went unpunished, that remarks of his supervisors regarding male employees were discriminatory, and that his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute. He alleges that CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory. Thus, consideration of the CBA *as applied to Title VII and the ADA*—not interpretation of the CBA itself—is what is required to resolve Carmona's claims.

*Id.* at 349-50 (emphasis in original).

SWA argues that the adjudication of DeGracia's state-law claims requires resolution

of whether Bradley and Clayton acted as agents of SWA during the SBOA hearing, which requires consultation of the CBA. The court disagrees. Resolution of this issue would not involve interpretation of the CBA because it would not bring "any CBA provisions into dispute[.]" *Id.* at 349. As in *Carmona*, neither party contends that the relevant provision of the CBA is ambiguous or is otherwise in dispute. *See id.* The court would therefore accept the terms of the CBA and apply principles of agency law to determine the scope of Bradley and Clayton's relationship with SWA. This court's mere reference to the undisputed terms of the CBA to resolve an issue incidental to DeGracia's claims would not render them preempted. *See, e.g., Hawaiian Airlines*, 512 U.S. at 261 n.8 (explaining that consultation of the CBA during the course of state-law litigation does not render the claim preempted).

SWA also maintains that DeGracia's claims are an impermissible collateral attack on the SBOA decision. The court disagrees. On the face of DeGracia's state-court petition, he complains that SWA's decision not to vote to reinstate him resulted from its discriminatory animus toward him. He does not argue that SWA lacked just cause to terminate him, or that the procedures of the CBA were not followed. Instead, he asserts that SWA violated his employment rights, protected by the TCHRA, because it was motivated by his race and/or national origin when he failed to reinstate him.[4]

---

[4]SWA maintains that DeGracia's employment rights ended when he was terminated in 2014, and that he had no employment rights during the SBOA proceeding in 2015. DeGracia alleges in his state-law petition, however, that his employment rights continued until at least the conclusion of the SBOA hearing.

IV

The court turns next to SWA's contention that DeGracia's state-law claims are preempted by various aviation safety laws and regulations, *i.e.*, 49 U.S.C. §§ 44701, *et seq.*, and 14 C.F.R. 121.1, *et seq.*  According to SWA, the FAA regulates commercial airlines' training programs and preempts the field of airline safety.

DeGracia argues that neither SWA nor he has identified any FAA requirement that is in conflict with his discrimination claims, and that were he reinstated (i.e., but for SWA's discrimination), he would have completed *more*—not less—training, which accords with the purposes of the FAA.

SWA does not identify any provision of the FAA that preempts DeGracia's state-law discrimination claims.  Instead, SWA simply states that the FAA preempts the field of airline safety, and that the FAA warns against the dangers of employing pilots who have repeatedly failed training.  SWA has not demonstrated that DeGracia's claims are preempted by federal aviation regulations.

V

DeGracia requests an award of attorney's fees under 28 U.S.C. § 1447(c).

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."  *In re*

*Enable Commerce, Inc.*, 256 F.R.D. 527, 533 n.14 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). "The decision to award fees is a matter of discretion." *Fathergill v. Rouleau*, 2003 WL 21467570, at *2 (N.D. Tex. June 23, 2003) (Fitzwater, J.).

The court holds that DeGracia is entitled to recover his attorney's fees, just costs, and actual expenses because SWA lacked an objectively reasonable basis for seeking removal, particularly in light of the Supreme Court's opinion in *Hawaiian Airlines* and the Fifth Circuit's decision in *Carmona.*

A fee award is limited to the "fees and costs incurred in federal court that would not have been incurred had the case remained in state court." *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997). If the parties cannot agree on the amount that DeGracia should recover, and arrange for payment of that sum, DeGracia must file his fee application no later than 28 days from the date this memorandum opinion and order is filed.

\* \* \*

DeGracia's motion to remand is granted. The courts holds that it lacks subject matter jurisdiction and, pursuant to 28 U.S.C. § 1447(c), remands this case to the 101st Judicial District Court of Dallas County, Texas. The clerk shall effect the remand according to the usual procedure. SWA's motion to consolidate this case with a lawsuit that DeGracia filed

against SWA in this court is denied as moot.

    **SO ORDERED**.

November 29, 2016.

                                                             SIDNEY A. FITZWATER
                                                             UNITED STATES DISTRICT JUDGE